IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JUAN GABRIEL MARQUEZ<br>   *Plaintiff*<br><br>   v.<br><br>TEXAS DEPARTMENT OF PUBLIC SAFETY, Public Safety Commission, STEVE MCCRAW, in his individual and in his official capacity as Director of DPS and AMANDA ARRIAGA, in her individual and official capacity as Chief of the DPS Driver License Division, TEXAS HEALTH AND HUMAN SERVICES COMMISSION, COURTNEY N. PHILLIPS, in her official capacity as Executive Commissioner of HHSC, TEXAS DEPARTMENT OF STATE HEALTH SERVICES, Vital Statistics Unit, COMMISSIONER JOHNWILLIAM HELLERSTEDT, MD, in his official capacity, as Commissioner of DSHS and TARA DAS in her individual and official capacity as State Registrar<br>   *Defendants* | § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. **5:19-cv-01182** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

## I.  Introduction:

1. The Plaintiff in this case is an adult United States citizen. He was born in Fort Stockton, Texas on June 24, 1982. Plaintiff resides in Texas.

2. The Defendants have recently refused and continue to refuse, to provide the Plaintiff with certified copies of his birth certificate. Defendants have also recently and continue to refuse, to provide Plaintiff with a renewal to his expired Texas driver's license. Such refusal appears to be based upon the suspicion of fraud in the recording of Mr. Marquez' birth in Fort

Stockton, Texas. The lack of birth certificate and driver's license is causing serious harm to Plaintiff and denies him his rights of citizenship.

3. Defendants' actions violate the Fourteenth Amendment, as well as the Supremacy Clause of the United States Constitution. Individual Defendants McCraw, Arriaga and Das are sued in their official and individual capacities. The remaining individual Defendants are sued in their official capacities. Plaintiffs seek damages and declaratory and injunctive relief.

## II. Jurisdiction and Venue:

4. This court has federal question jurisdiction pursuant to 28 U.S.C. §1331.

5. Declaratory judgment is sought pursuant to 28 U.S.C. §2201.

6. Venue is proper pursuant to 28 U.S.C. §1391 because many of the complained of acts in this case occurred in Comal County, Texas, and because both the Plaintiff and the Defendants reside in the Western District of Texas.

## III. Parties

7. Plaintiff Juan Gabriel Marquez is a United States citizen, born in Fort Stockton, Texas. Plaintiff was born to a United States citizen mother. Plaintiff's mother was also born in Fort Stockton, Texas in 1958. Plaintiff is a resident of New Braunfels, Texas.

8. Defendant Texas Department of State Health Services, (DSHS) Vital Statistics Unit is the state agency and unit charged with recording Texas births and providing certified birth certificates upon proper applications therefore. State headquarters for the agency is located in the Western District of Texas.

9. Defendant Texas Health and Human Services Commission is the state agency charged with receiving applications for birth records, issuing birth records, and providing administrative hearings to individuals who are suspected of having falsely registered birth records. HHSC performs these functions in part through its sub-agency the Department of State Health Services (DSHS). HHSC's headquarters are located at 4900 N. Lamar Blvd., Austin, Texas 78751.

10. Defendant Courtney N. Phillips is the Executive Commissioner of HHSC and supervises its functions including, but not limited to, the receipt of applications for birth records, issuance of birth records, and provision of administrative hearings to certain applicants. Executive Commissioner Phillips is sued in her official capacity.

11. Defendant John William Hellerstedt, MD, is the Commissioner of the Texas Department of State Health Services. He is sued in his official capacity.

12. Tara Das is the Vital Statistics State Registrar and is responsible for the registration of vital statistics and the attachment of addenda to and issuance of Texas birth certificates. Dr. Das attached an addendum to Plaintiff's birth record and refused to issue Plaintiff a certified birth certificate. She is sued in her official and individual capacity.

13. The Texas Department of Public Safety (DPS) is the state agency charged with receiving applications for Texas driver's licenses, determining applicants' eligibility for Texas driver's licenses, and issuing Texas driver's licenses to eligible applicants. DPS performs these functions through its Driver License Division. DPS's headquarters are located at 5805 North Lamar Blvd., Austin, Texas 78752-4431.

14. Steven C. McCraw is the Director of DPS and supervises the functions of DPS including, but not limited to, the agency's receipt of applications for Texas driver's licenses,

determination of eligibility for Texas driver's licenses, and issuance of Texas driver's licenses. Director McCraw is sued in his individual and official capacity.

15. Amanda Arriaga is the Chief of DPS's Driver's License Division and is responsible for the supervision and implementation of agency policies and practices affecting the issuance of Texas driver's licenses. Chief Arriaga is sued in her individual and official capacity.

### IV. Facts

*State Regulatory Scheme: Defendants' Duties and Authority, DSHS-VSU*

16. The Texas Department of State Health Services, Vital Statistics Unit, ("DSHS-VSU"), is responsible for registering, collecting, compiling, and preserving all state birth, death, marriage, and adoption records.

17. This duty is carried out through a network of local Vital Records offices located throughout the state. Tex. Health & Safety Code, Title 3 (Vital Statistics), §191.002.

18. All Vital Statistics officers must provide certified copies of birth certificates upon request to any persons qualified to receive them. *Id.*, Title 3 (Vital Statistics), § 191.051.

19. The local registrar officials must enforce the state regulations and requirements. *Id.*, Title 3 (Vital Statistics), Chapter § 191.001.

20. Defendants are responsible for ensuring uniform compliance throughout the state, and have supervisory power over all local registrars. *Id.*

21. Defendants can investigate local irregularities and report the matter to local district or county attorney for prosecution, and such attorneys must promptly initiate proceedings for such violations. *Id.*

22. The state registrar may attach to the original record an addendum that sets out any information received by the state registrar that may contradict the information in a birth, death, or fetal death record required to be maintained in the vital statistics unit. Title 3 (Vital Statistics), Chapter § 191.033.

23. If the vital statistics unit or any local registration official receives an application for a certified copy of a birth, death, or fetal death record to which an addendum has been attached under Section 191.033, the application shall be sent immediately to the state registrar. After examining the application, the original record, and the addendum, the state registrar may refuse to issue a certified copy of the record or part of the record to the applicant. Title 3 (Vital Statistics), Chapter § 191.057(b).

24. If the registrar refuses to issue a certified copy of the record, the applicant is notified and given an opportunity for a "fair" hearing to challenge the determination. Nominally, the burden of proof is on the agency, however, in practice the applicant must prove the validity of the birth record in question.

25. To qualify for receipt of a certified copy of a birth certificate, a person must produce acceptable personal identification. Specifically, the person must present the identification documents set forth in the regulations. 25 Tex. Admin. Code, ("T.A.C."), §181.28 (i)(I0-11).

26. Defendants are responsible for promulgating the eligibility regulations and their interpretations.

27. Defendants issue guidance and monitor the local offices to ensure compliance.

*State Regulatory Scheme: Defendants' Duties and Authority, DPS*

28.     The Department of Public Safety of the State of Texas, DPS, is responsible for receiving and evaluating all applications for a Texas Driver's License, (TDL) including applications for renewal of expired DLs.

29.     The Public Safety Commission controls the department. Texas Gov't. Code, § 411.003.

30.     The Director of the DPS is responsible for the conduct of the department's affairs. Texas Government Code, § 411.006.

31.     The DPS determines appropriate documentation for evaluating a TDL application. In order to be eligible for a Texas Drivers License, the applicant must be a Texas resident, lawfully present in the United States, and be able to prove his or her identity. The applicant must bring to a local driver license office certain documents to prove his or her identity, lawful presence, and other eligibility requirements. The Federal Real ID act requires that an applicant for federally-compliant photo ID or drivers license may prove their identity by "present[ing] … a valid, unexpired U.S. passport." 6 CFR § 37.11 (c) (1) (i). An applicant may prove his or her lawful presence through the presentation of a passport. *See* 6 CFR § 37.11 (g) (1).

32.     The DPS maintains a record of each driver's license application received by the department, each denied application and the reasons for the denial. Transp. Code, § 521.041.

33.     A person, other than a person expressly exempted, may not operate a motor vehicle on a highway in this Texas unless the person holds a valid driver's license. Transp. Code,§ 521.021

34.     Generally, an individual applying for a TDL or seeking to renew a TDL, is simply informed of the DPS decision orally and without information on possible appeal procedures or the basis of the denial.

35.     Occasionally, the DPS will provide written notice of the denial of a TDL. *See* Transp. Code, § 521.298. (*See* Exhibit No. 1, "Flagged Birth Certificate" letter given to DL renewal applicant)

36.     Plaintiff here did not receive written notice of the denial to renew his TDL, nor did he receive any written information concerning appeal options.

> *Defendants' unlawful policy of denying Texas driver's licenses based on unproven allegations of false birth registration or non-citizenship.*

37.     DPS's officially adopted policies regarding the processing of cases in which HHSC informs DPS that the agency believes an individual may have obtained their birth record through fraud **requires such an applicant to have the "flag" removed by following administrative procedures at the HHSC, before a driver's license will be issued**, regardless of the applicant's qualification for receiving a DL. DPS has developed an agency letter that explains the policy. The "Flagged Birth Certificate" letter, which is generic and is not specific to any applicant, explains that the applicant must apply for another copy of her Texas birth certificate and pay the applicable fee, informs her that her application (at DPS) will be denied, and states that she will then "receive deny [sic] letter with a list of requirements to fulfill." Exh. No. 1. The letter does not explain these "requirements." The letter goes on to explain that once a decision is rendered on her application for a birth certificate, "Austin may be able to remove Administrative Status, update citizenship or leave as presently indicated." *Id*. Finally, the document says that she may qualify "in most cases to be eligible for employment authorization document [sic] or permanent

resident card" and warns her that she must be "truthful in hearing [sic] to qualify." *Id*.

38. Defendants' binding, agency-wide driver's license denial policy is stated clearly in the "Flagged Birth Certificate" letter and in Defendants' officially adopted policy for "Processing an HHSC case." *See* Exhibits. Nos. 1 & 2. Defendants have a policy and widespread practice of summarily denying applications for Texas driver's licenses based on unproven allegations of non-citizenship or unproven false registration of births without providing adequate notice or any pre- or post-deprivation opportunity to hear and refute Defendants' evidence or challenge the denial, compliant with due process. Defendants simply turn driver's license applicants subject to this policy away or, as in the case of Plaintiffs' second application, refer them to HHSC to have the "flag" removed, without providing any guarantee that even successfully pursuing an administrative process with that agency will result in the issuance of their Texas driver's licenses. *See infra, para. 62.*

*Plaintiff's Particularized Facts*

39. Plaintiff Juan Garbriel Marquez was born on June 24, 1982 in Fort Stockton, Texas. Plaintiff's birth was assisted by a mid-wife, Librada Pena, who is now deceased.

40. The mid-wife did not register Plaintiff's birth until 1984.

41. Plaintiff's mother, Luz Elena Marquez was born on July 6, 1958 at Fort Stockton, Texas and was a United States citizen when she gave birth to Plaintiff. At the time of his birth, Plaintiff had three U.S. born older brothers.

42. In 1982, the year of Plaintiff's birth, his mother worked in the United States and paid into social security.

43. In late 1982 or early 1983, Plaintiff's grandfather became gravely ill and the family travel and stayed in Mexico until December of 1983 or January of 1984.

44. While in Mexico, Plaintiff's mother became concerned about getting vaccinations for Plaintiff. Plaintiff's mother recalls that she was told that he could not receive vaccinations unless he registered his birth in Mexico. Plaintiff's mother registered his birth in Mexico on May 23, 1983, eleven months after his birth.

45. Several months after the families return to the United States, Plaintiff's mother, concerned that the family would have to back and forth to Mexico because her mother-in-law was ill, decided she should get Plaintiff's birth certificate.[1] She was surprised to find out that the mid-wife had not registered the birth and she was unable to get a birth certificate. When Plaintiff's mother raised this with the mid-wife, she was told that she, the mid-wife, had just forgotten to register the birth because of family emergencies in her own family. But, the mid-wife assured her that she would get it done.

46. After waiting a few days, Plaintiff's mother returned to the vital statistics office and secured a delayed birth certificate. The delayed birth certificate was signed and certified by the midwife on September 21, 1984. (Exhibit No. 3)

47. Thereafter, Plaintiff, without difficulty, attended schools in New Mexico and Texas, graduated from high school in Austin, Texas on May 20, 2000 from Del Valle High School.

48. On or about December 23, 2009 Plaintiff was informed that an issue concerning his place of birth existed. In 2009 as he planned for a trip abroad, he tried to get a passport and was

---

[1] Plaintiff's mother already had birth certificates for the three older U.S. born sons.

informed by the State Department that a birth record existed in Mexico that contradicted his Texas birth record. He did not have enough time to respond and make his trip, so he cancelled his trip.

49. Again in October of 2016, Plaintiff again applied for a passport and on or about October 25, 2016 he was informed that the State Department required additional information because "your birth record was filed … by a birth attendant who is **suspected** of submitting false birth records." (emphasis added).

50. Plaintiff was instructed by the State Department to submit additional information including a response to the letter, as well as, information such as: biographical information; baptism information; school attendance records; mother's address; mother's employer at the time of his birth; and other responsive information.

51. On or about December 15, 2016, Plaintiff responded to the State Department's letter with a letter from his attorney and additional documents for the State Department to consider such: as his delayed birth certificate; his baptismal certificate; his immunization records; his mother's social security earnings statement showing she worked in the U.S. in 1982, the year of his birth; deed to property bought in Fort Stockton by his parents in 1984 after his birth; his older siblings school and shot records showing his family was living in the U.S. for several years prior to his birth and other similar records.

52. On July 11, 2017, Plaintiff was issued a United States Passport. That document indicates that the U.S. State Department considers Plaintiff to be a U.S. citizen born in Texas.

53. On June 24, 2018, Plaintiff's Texas Driver's License expired.

54. Shortly before the expiration date, Plaintiff presented himself at a local Department of Public Safety office in San Marcos, Texas to renew his driver's license. He presented his expiring driver's license. He was informed that he could not renew his license, but that he should try again, but bring in documents such as his passport. He was told that DHS records on his birth were a problem. He was also informed that he could apply in the New Braunfels office of DPS.

55. A few days later he went to a DPS office in New Braunfels with the documents he was told to bring. He was informed that they, DPS, needed to review his documents and that an officer would contact him regarding his application to renew his DL.

56. He was also told that he would not be allowed to renew because of an issue with his birth records and that a trooper in charge would call him to explain why. He left the DPS office and a couple of weeks later he received a call from someone identifying himself as DPS Trooper Einskee [sp]. Over the course of several conversations he was again informed that his license would not be renewed.

57. After consultation with his attorney, Mr. Marquez attempted again to secure a renewal of his driver's license. On August 23, 2019, he again went to the DPS office in New Braunfels armed with documents listed by DPS as necessary to prove his citizenship, including his current and active passport.

58. On August 23, 2019, he asked to meet with a manager at the DPS office in New Braunfels and again made his case for a renewal, emphasizing that although he was born in Fort Stockton, Texas, if DPS did not believe him, he nevertheless was a United States citizen because his mother was in fact a U. S. citizen when he was born. The office manager told Plaintiff she would take it up the chain of command and would try to talk to "legal".

59. On August 29, 2019 Plaintiff received a call from the DPS office manager and was told that she was reaching out to her superiors and was recommending that the "flag" on his DPS record be removed.

60. On September 5, 2019, Plaintiff received a call from Laura Lopez from the DPS office in New Braunfels who informed Plaintiff that she was now in direct contact with the an Inspector General in Austin and was still trying to get the flag removed from his record.

61. On September 10, 2019, Plaintiff received a call from Mr. Jaime Reyes, who identified himself as an investigator with the office of the DHHS Inspector General, and was informed that only by removing the flag on his birth record at DHHS or by filing a Federal lawsuit would he be able to get a Texas driver's license. (as he had also been informed by DPS employees and troopers)

62. Plaintiff's application for a driver's license renewal was rejected because of an addendum place on his birth record questioning the validity of his birth in Fort Stockton.

63. Upon information and belief, Plaintiff's Texas birth record addendum was a result of a report from the United States State Department to Texas regarding a conflicting birth record in Mexico.

64. The addendum to Plaintiff's Texas birth record stated that "on May 22, 2017, John Salazar of the United States Department of State" reported to the State of Texas that Plaintiff "has a Mexican Birth Record which indicates that he was born on June 24, 1982 in Torreon, Coahuila, Mexico." The addendum suggested fraud. Exhibit No. 4.

65.     The Texas DSHS Inspector General investigated the State Department's report and the issue of whether the Texas birth record was fraudulently secured.

66.     Jaime Reyes, an investigator with the Texas DSHS office of Inspector General, after investigation, determined that the allegation was **not sustained.** Plaintiff was provided with a redacted copy of the Inspector General's determination. Exhibit No. 5. He did not know why the investigation had occurred nor the implication of the claims investigated.

67.     At the recommendation of the DPS trooper in his initial renewal application and in an effort to secure his driver's license Plaintiff applied for a certified copy of his birth certificate.

68.     On October 1, 2018 he receive official notice of the addendum to his Texas birth record in a letter from Dr. Tara Das, the Texas State Registrar. In her letter to Plaintiff, the Defendant Das stated: "you are hereby notified that I refuse to issue the requested birth record…" because a Mexican birth record indicated he was born in Mexico, even though the investigator in the OIG office of the DSHS had found that the suggestion of fraud **was not sustained**.

69.     He was also informed of an opportunity to appeal the decision and be provided a "fair hearing" before the Texas Department of State Health Services.

70.     Plaintiff requested a fair hearing in accordance with State regulations and presented evidence, through an attorney, at the telephonic hearing including: his passport from the U.S. State Department issued on July 11, 2017 indicating "TEXAS, U.S.A." as his place of birth; a copy of a final report from the Office of Inspector General of the Texas Department of State Health Services finding that an allegation that the contradicting birth records "may suggest fraud" "**is Not Sustained**" (emphasis in original); social security records indicating Plaintiff's mother worked in the United State in 1982, the year of Plaintiff's birth; birth records from older

siblings of the Plaintiff, born in the United States; declarations from Plaintiff's mother testifying that the Mexican birth record was false and made by her so that she could get needed vaccinations for Plaintiff; declarations from older siblings who recalled his birth and supported Plaintiff's mother's account as well as shot records, school records, and other supporting documents.

71. In spite of the overwhelming record of his U. S. citizenship and his birth in Fort Stockton, Texas, the ALJ refused to have the addendum to his Texas birth record removed and to issue a certified birth certificate, citing inconsistencies in the memory of Plaintiff's 61 year old mother, of events occurring more than 30 years prior, and inconsistencies in the Mexican birth record and actual facts,[2] as meeting the State's burden of showing, based on a preponderance of evidence, the fraud of the Texas birth record. [the ALJ's order, while acknowledging the burden of proof was the State's, determined that Plaintiff had failed to disprove the conflicting birth record, and therefore denied the requested relief.]

72. In spite of the overwhelming record of his U. S. citizenship and his birth in Fort Stockton the Defendants refused to issue Plaintiff a certified birth certificate as well as refusing to issue a driver's license renewal.

## V. CAUSES OF ACTION

FIRST CAUSE OF ACTION: 42 U.S.C. §1983 - EQUAL PROTECTION

73. Plaintiff incorporates Paragraphs 1- 72 above as if fully set out herein.

---

[2] E.g.the Mexican birth record, according to the ALJ, indicated that Plaintiff's paternal grandfather was dead, when he was actually alive at the time of when it was registered.

74. At all relevant times, Defendants Hellerstedt, Phillips, Das, Arriaga, and McCraw in this case were acting under color of state law.

75. Defendants have a current policy, pattern, and practice of denying birth certificates to the Texas-born, U.S. citizens of Mexican heritage, who are identified by the United States Department of State to have conflicting birth records in Mexico.

76. Moreover, Defendants have a current policy and a pattern and practice of denying renewal driver's licenses to United States citizens who have an addendum placed on their Texas birth records, regardless of status as citizens of the United States.

77. Specifically, Plaintiff was denied a certified birth certificate and a renewed driver's license, pursuant to the Defendants' regulations and harsh interpretations thereof, as set forth above. Such regulations and interpretations leave Plaintiffs with no access to a birth certificate or a valid driver's license and leaves him exposed to criminal sanctions by the State if he drives with an expired driver's license.

78. All persons born in the United States are entitled to receive their own birth certificates. Defendants are violating the Fourteenth Amendment by abridging the privileges and immunities of the U.S. citizens.

79. Furthermore, Defendants are giving unequal treatment to the Plaintiff, as compared with the treatment of all otherwise similarly situated Anglo citizens of the State of Texas.

80. Specifically, the Plaintiff was denied a birth certificates on the basis of unconfirmed, speculative and contradicted assumptions made by the U.S. State Department, that even the State Department abandoned and that the State's DHS inspector general found to be not

sustained; and as a result he is being denied the benefits of his citizenship, including but not limited the right to travel and safeguard his citizenship and to vote.

81. Defendants have no reasonable justification for their discriminatory denial of a birth certificate and a driver's license to the Plaintiff.

82. Defendants have knowingly taken the actions complained of in this suit with the intent to discriminate against the Plaintiff and deny him of his rights.

83. Defendants' conduct violates the Equal Protection clause of the Fourteenth Amendment of the United States Constitution.

84. Defendants' conduct is causing and will cause Plaintiffs irreparable harm as set forth above.

85. Plaintiffs seek declaratory and injunctive relief against Defendants Hellerstedt, Phillips, Das, Arriaga, and McCraw in their official capacities, declaring the Defendants' current policies, practices and/or regulation unconstitutional, and enjoining the Defendants' current failure and refusal to accept Plaintiff's passport as proof of citizenship and to provide the birth record and driver's license to which he is entitled. Plaintiff also seeks damages from defendants Das, Arriaga and McCraw in their individual capacities.

86. Plaintiffs bring this claim pursuant to 42 U.S.C. §1983 and 28 U.S.C. §2201.

## SECOND CAUSE OF ACTION: § 1983 – DUE PROCESS

87. Plaintiff incorporates Paragraphs 1- 72 above as if fully set out herein.

88. At all relevant times, Defendants Hellerstedt, Phillips, Das, Arriaga, and McCraw in this case were acting under color of state law.

89. Defendants have a current policy, pattern, and practice of denying birth certificates to the Texas-born, U.S. citizens of Mexican heritage, who are identified by the United States Department of State to have conflicting birth records in Mexico by placing an "addendum" on their Texas birth record and doing so without prior notice.

90. Moreover, Defendants have a current policy, and a pattern and practice of denying renewal driver's licenses to United States citizens who have an addendum placed on their Texas birth records, regardless of status as citizens of the United States, without prior notice of the "flag" on their driving records.

91. Specifically, Plaintiff was denied a birth certificate and a renewed driver's license. pursuant to the Defendants' regulations and harsh interpretations thereof, as set forth above. Such regulations and interpretations give no notice to Plaintiff until he needs to renew an expired driver's license, with no access a valid driver's license and leave exposed to criminal sanctions by the State if he drives with an expired driver's license.

92. Defendants have knowingly taken the actions complained of in this suit with the intent to discriminate against the Plaintiff and deny him of his rights.

93. Defendants' conduct violates the substantive and procedural Due Process clause of the Fourteenth Amendment of the United States Constitution.

94. Defendants' conduct is causing and will cause Plaintiffs irreparable harm as set forth above.

95. Plaintiffs seek declaratory and injunctive relief against Defendants Hellerstedt, Phillips, Das, Arriaga, and McCraw in their official capacities, declaring the Defendants' current policies, practices and/or regulation unconstitutional, and enjoining the Defendants' current failure and

refusal to accept Plaintiff's passport as proof of citizenship and to provide the birth record and driver's license to which he is entitled. Plaintiff also seeks damages against Defendants McCraw, Arriaga and Das in their individual capacities.

96. Plaintiffs bring this claim pursuant to 42 U.S.C. §1983 and 28 U.S.C. §2201.

### THIRD CAUSE OF ACTION:
### SUPREMACY CLAUSE AND PREEMPTION

97. Plaintiffs incorporate Paragraphs 1- 72 above as if fully set out herein.

98. At all relevant times, Defendants Arriaga, and McCraw in this case were acting under color of state law. Defendants have at all times acted under color of state law.

99. The federal government has preempted the field of immigration and birthright citizenship.

100. Determination of citizenship, is the exclusive function of the federal government.

101. Likewise, matters of international diplomacy and foreign affairs are solely matters for the federal government.

102. Defendants have no authority to interfere with such matters.

103. Defendants have violated the Supremacy Clause of the United States Constitution by refusing to accept the U. S. State Department's determination of Plaintiff's citizenship.

104. Plaintiffs have been and will be irreparably harmed by the unconstitutional actions and policies of Defendants.

105. Infliction of such harms and hardships upon the Plaintiff in turn harms federal diplomatic and international affairs.

106. Likewise, forcing foreign governments to respond to the fifty states harsh and false

interpretation on such key matters interferes with federal diplomatic and foreign affairs.

107. Such sanctions and hardships also interfere and conflict with the careful, extensive and detailed federal statutory scheme for immigration.

108. Defendants have at all times acted knowingly and intentionally.

109. Plaintiffs seek declaratory and injunctive relief against Arriaga, and McCraw in their official capacities, declaring Defendants' current practices unconstitutional, and enjoining the current rejection of valid passports as proof of citizenship and awarding damages against these defendants in their individual capacities.

110. Plaintiffs bring this claim pursuant to 42 U.S.C. §1983 and 28 U.S.C. §2201.

## I. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant the following relief:

1) Declare Defendants policies unconstitutional and invalid as applied to Plaintiff;

2) Enjoin Defendants and require them to issue a certified birth certificate and a renewed driver's license to the Plaintiff;

3) Award damages in an amount consistent with the evidence and with justice.

4) Award Plaintiffs court costs and reasonable attorney's fees and grant any other relief to plaintiff as allowed by law and that the Court should deem fit.

DATED: October 3, 2019            Respectfully submitted,

By: /s/ *Jose Garza*

GARZA GOLANDO MORAN
Jose Garza Attorney-In-Charge
garzpalm@aol.com
Texas Bar No. 07731950

Martin Golando

Texas Bar No. 24059153

405 N. St. Mary's, Suite 700

San Antonio, Texas 78205

(210) 892-8543